**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| CARLOS ACUNA, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL-COMMERCIAL AUDIT, INC. d/b/a MCA MANAGEMENT COMPANY,<br><br>Defendant. | **Civil Action No.: 9:21-cv-81256-WPD** |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

**Introduction**

Through the parties' class action settlement, Medical-Commercial Audit, Inc. ("Defendant") agreed to create a non-reversionary settlement fund of $7,600.00. As a result, each of the 33 participating class members will receive $230.30—an excellent recovery for Fair Debt Collection Practices Act ("FDCPA") class actions of this kind. The settlement fund exceeds 1% of Defendant's book value net worth, and thus is more than Carlos Acuna ("Plaintiff") could have recovered for the class in statutory damages had he prevailed at trial. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting statutory damages in a class action to the lesser of $500,000 of 1% of the net worth of the debt collector).

Defendant will separately pay $1,000 to Plaintiff for his claim for individual damages, plus, it has agreed to pay the costs of administering the settlement, and attorneys' fees, costs and

expenses to Class Counsel as awarded by the Court.[1] Finally, Defendant has agreed to cease collecting debts from consumers in Florida.

In accordance with this Court's preliminary approval order, ECF No. 23, the settlement administrator distributed notice of the settlement—via direct mail—to each potential class member. Separately, Defendant provided notice of the settlement to the requisite government agencies pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) ("CAFA"). *See* ECF No. 24.

No class member objected to any aspect of the settlement, and no class member sought exclusion from the settlement. No objections resulted from the CAFA notice, either.

Given the excellent results for the class members and lack of opposition to the settlement, Plaintiff respectfully requests that this Court finally approve the parties' class settlement. Defendant does not oppose final approval of the settlement.

## Summary of the Settlement

This Court previously certified the following class for settlement purposes:

> All persons (a) with a Florida address, (b) to whom Medical-Commercial Audit, Inc. d/b/a MCA Management Company mailed a debt collection communication not returned as undeliverable, (c) in connection with the collection of a consumer debt, (d) between July 17, 2020 and July 16, 2021.

*See* ECF No. 23 at 2-3.

Following preliminary approval, Class Settlement.com—the Court-approved settlement administrator—implemented a robust notice program by providing direct mail notice to all potential class members at their last known address according to Defendant's records. Prior to mailing the notice, First Class de-duplicated class members' records and updated addresses

---

[1] Plaintiff filed a separate fee petition, which is currently before Judge Matthewman. ECF Nos. 25-26.

through the U.S. Postal Service. *See* Declaration of Dorothy Sue Merryman, attached as Exhibit A, at ¶¶ 5-6. Notices were then disseminated to 740 persons on March 2, 2022. *Id*. at ¶ 7. For 81 notices later returned undeliverable with no forwarding addresses, Class Settlement.com undertook additional search measures to attempt to locate updated addresses for those class members. *Id*. at ¶ 8.[2]

The Class's reaction has been universally positive. Not one person objected to the settlement or sought exclusion from it. *Id.* at ¶ 11. And no objections resulted from notice provided to governmental agencies under CAFA.

As a result, each of the 33 participating class members will receive a check for $230.30. To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks to any forwarding addresses, the remaining funds will be sent to the Legal Aid Service of Palm Beach County—the parties' designated *cy pres* recipient.

In addition, Defendant has stopped collecting debts from consumers in Florida. Separately, Plaintiff will receive, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i), his "additional" damages of $1,000.00. Defendant also will separately pay Class Counsel's attorneys' fees, costs and expenses, as approved by the Court.

**Argument**

**I.     This Court should confirm its certification of the settlement class.**

This Court previously certified the class for settlement purposes. *See* ECF No. 22 at 2-3. Plaintiff agrees with this Court's reasoning and, as nothing has changed in the interim, does not

---

[2]     Plaintiff's counsel also maintained relevant documents on its website. *See* https://www.gdrlawfirm.com/Acuna.

believe it necessary to revisit certification in granting final approval. Thus, Plaintiff respectfully submits that this Court should confirm certification of the class.

## II. This Court should finally approve the settlement as fair, reasonable, and adequate.

The Eleventh Circuit identified six factors for courts to consider in analyzing the fairness, reasonableness, and adequacy of a class action settlement under Rule 23(e): "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Fraught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011).[3] Rule 23(e) itself requires this Court to consider additional factors such as whether the class representatives and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."); *Turner v. Gen. Elec. Co.*, No. 2:05-CV-186-FTM-99DN, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) ("Public policy strongly favors the pretrial settlement of class action lawsuits. Settlement has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice.").

---

[3] Internal citations, quotations and footnotes are omitted, unless otherwise noted.

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### A. The parties' arm's-length negotiations counsel in favor of settlement approval— there was no fraud or collusion behind the settlement.

Initially, a court must inquire whether a settlement is "free of fraud or collusion." *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000). "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 531 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011); *accord Roundtree v. BushRoss, P.A.*, Case No. 8:14–cv–00357–JDWAEP, 2015 WL 5559461, at *2 (M.D. Fla. Sept. 17, 2015) ("Finally, there is no indication of any fraud or collusion, and both parties have aggressively and skillfully litigated this case.").

Here, the settlement was reached only after numerous discussions between counsel concerning the merits of the case, and after Defendant provided Plaintiff with information concerning the size of the class and Defendant's net worth. The settlement thus is not a product of collusion but was the result of arm's-length settlement negotiations when each party had a view as to the strengths and weaknesses of its position. *See*, *e.g.*, *Claxton v. Alliance CAS, LLC*, No. 19-61002, 2020 WL 2759826, at *2 (S.D. Fla. May 27, 2020) (Altman, J.) ("The settlement was reached in the absence of collusion and is the product of informed, good-faith, arm's-length negotiations between the parties and their capable and experienced counsel, having adequate knowledge of the strengths and weaknesses of their claims and the defenses and the risks of proceeding with the litigation through a motion for class certification, trial, and appeal.").

### B. The probability of Plaintiff's success on the merits and the range of possible recovery favor approval of the settlement.

The settlement fund here amounts to more than 1% of the book value net worth of Defendant. *See* 15 U.S.C. § 1692k(a)(2)(B); *see also Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities). Also noteworthy, there is no guarantee of full statutory damages at trial because the FDCPA's damages provision is permissive rather than mandatory. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable."). That is, the law provides for statutory damages awards up to certain amounts after balancing such factors as the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. *See* 15 U.S.C. § 1692k(b)(2). But there is no minimum award.

Accordingly, even had Plaintiff prevailed at trial, the jury may have awarded little in the way of statutory damages, or even potentially none at all. Moreover, the risk of a minimal damages award to the class was not merely hypothetical. *See, e.g.*, *Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded,* 706 F. App'x 529 (11th Cir. 2017); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* No. 1:06 CV 1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k, and awarding no "additional damages" to members of the class).

Furthermore, had this case moved forward, Defendant intended to assert that it was exempt from the Florida Consumer Collection Practices Act's ("FCCPA") registration requirement, *see* ECF No. 6 at ¶¶ 48-49—a highly fact-based argument that would have involved significant discovery into all the various creditors with which Defendant does business. *See* Fla. Stat. § 559.553(3)(h) (exempting from the registration requirement out-of-state consumer debt collectors who do not solicit consumer debt accounts for collection from credit grantors who have a business presence in Florida). If Defendant had prevailed on this defense, then Plaintiff and the Class would not have recovered any money.

Given the foregoing, the immediate relief provided by the settlement is substantial, and a recovery of $230.30 per participating class member represents an excellent result. Indeed, the settlement here compares very favorably to other similar FDCPA class settlements approved throughout the country. *See, e.g.*, *Claxton*, 2020 WL 2759826, at *2-3 ($15.67 per class member); *Sullivan v. Marinosci Law Group, P.C., P.A.*, No. 9:18-cv-81368, 2019 WL 6709575, at *2 (S.D. Fla. Nov. 22, 2019) (Middlebrooks, J.) ($27.51 per class member); *Dickens v. GC Servs. Ltd. P'ship*, No: 8:16-cv-803-T-30TGW, 2019 WL 2280456, at *3 (M.D. Fla. May 29, 2019) ($10 per class member); *Alderman v. GC Servs. Ltd. P'ship*, No. 2:16-cv-14508, 2019 WL 1605656, at *2 (S.D. Fla. Apr. 9, 2019) ($10 per class member); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member).[4]

---

[4] *See also Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *3 (E.D. Pa. Sept. 13, 2016) ($10.92 per class member); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 1273297, at *3 (S.D. Ohio Mar. 31, 2016) ($10 per class member); *Whitford v. Weber & Olcese, P.L.C.*, No. 1:15-cv-400, 2016 WL 122393, at *2 (W.D. Mich. Jan. 11, 2016) (same); *Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14–CV–00142–SJD, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) (approximately $31 per class member).

In addition, Defendant has agreed to cease collecting debts from consumers in Florida, and to register as a consumer collection agency with the state if it decides to start doing so again in the future. Importantly, Plaintiff might not have obtained this relief had this case gone to trial. *See, e.g.*, *Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1346 (S.D. Fla. 2008) (Dimitrouleas, J.) ("Count III of the Plaintiff's Complaint seeks injunctive relief under both the FCCPA and the FDCPA. Defendant is correct that the FDCPA does not authorize injunctive relief to private litigants.").

In sum, considering the benefits obtained here, in comparison to those likely at trial and those obtained in other similar actions, plus the risks in moving forward, these factors support final approval of the settlement.

### C. The complexity, expense and likely duration of the litigation favors settlement.

There is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (Gold, J.). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits . . . which frequently present serious problems of management and expense").

Here, at the time of settlement, Plaintiff still needed to obtain certification of the class, and even then, the parties faced substantial obstacles to bringing this case to a conclusion, including summary judgment motions, a potential jury trial on the merits and/or damages, and the prospect

of an appeal. Given these considerations, approval of the settlement is appropriate, in part, to avoid the uncertainties if the case moves forward. *See Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (Gonzalez, J.), *aff'd,* 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. Mar. 22, 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

As a result, this factor favors final approval of the settlement.

**D.  The opinions of class counsel and the class representative favor approval.**

A strong presumption of fairness should attach to the proposed settlement because it was reached by well-qualified counsel engaged in arm's-length negotiations with an experienced mediator. Courts accord great weight to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel.").

Plaintiff's counsel is extremely experienced in class action litigation, particularly cases under the FDCPA. *See* ECF No. 23-1 at ¶ 7. And both Plaintiff and his counsel firmly believe that the settlement here is fair, reasonable, and adequate, and in the best interests of class members. *See* Declaration of James L. Davidson, attached as Exhibit B, at ¶ 14. Correspondingly, the parties'

and their counsel's strong support for this settlement favor final approval. *See Veal v. Crown Auto Dealerships, Inc.*, No. 8-04-CV-0323-T-27-MSS, 2007 WL 2700969, at *3 (M.D. Fla. Sept. 13, 2007) ("The judgment of experienced counsel for both parties is that the settlement should be approved. The opinions of counsel support the Court's finding that the settlement is fair and reasonable.").

### E. The parties sufficiently developed the factual record to enable Plaintiff and his counsel to make a reasoned judgment concerning the settlement.

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Account Overdraft Litig.*, 830 F.Supp.2d 1330, 1349 (S.D. Fla. 2011) (King, J.). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, the parties had extensive discussions about the merits of the claims. In addition, Defendant provided Plaintiff with information concerning the size of the class and Defendant's net worth—the sole determinant of the class's maximum statutory damages award in this action. *See* 15 U.S.C. § 1692k(a)(2)(B). The settlement was therefore consummated when the parties had a good view towards the strengths and weaknesses of their respective positions, and an understanding of the maximum potential recovery for the Class. *See Mashburn*, 684 F. Supp. at 669 ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

### F. The positive reaction to the settlement further supports that the settlement is fair, reasonable, and adequate.

Of the more than 700 potential class members to whom Class-Settlement.com distributed direct mail notice, none objected to the settlement or sought exclusion from it. Moreover, notice of the settlement was provided to the appropriate government agencies as required by CAFA. ECF No. 24. No objections resulted from the CAFA notice, either.

This universally favorable reaction to the settlement supports its approval. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) (Goodman, M.J.) ("Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable."); *Hall v. Bank of Am., N.A.,* No. 12–22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (Moreno, J.) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg., Inc.,* No. 13–60749, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (Cohn, J.) (where "not a single state attorney general or regulator submitted an objection," combined with few objections to class settlement, "such facts are overwhelming support for the settlement").

### G. The settlement treats class members equitably.

Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class

members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each class member has the same claim resulting from receipt of a collection letter from Defendant at a time when Defendant was allegedly not registered as a consumer collection agency with the Office of Financial Regulation of the Florida Financial Services Commission. And as a result, the settlement provides that each participating class member will receive an equal portion of the settlement fund in exchange for providing the same release. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660-DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

Moreover, class members had the ability to exclude themselves from the settlement and pursue their claims individually. *See Charvat v. Valente*, No. 12:5746, 2019 WL 5576932, *6 (N.D. Ill. Oct. 28, 2019) ("Moreover, the ability to opt out of the settlement allows class members who received more than three calls to pursue the possibility of a greater award in an individual suit."). As a result, this factor favors final approval of the settlement.

### H. Distribution of notice of the settlement satisfied due process requirements and the requirements of Rule 23.

Rule 23 requires "that class members be given information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Fraught*, 668 F.3d at 1239.

Here, Class-Settlement.com used all reasonable efforts to provide direct mail notice to each member of the Class. *See* Ex. A at ¶¶ 3-11. The Court-approved notice apprised class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for submitting a claim, objecting or submitting a request to be excluded from the settlement; (5) information regarding class counsel's request for an award of attorneys' fees, costs and expenses; and (6) how to make inquiries and obtain additional information. *See* ECF No. 22-1 at 39-48.

In short, this notice plan ensured that class members' due process rights were amply protected, and the settlement should be approved. *See* Fed. R. Civ. P. 23(c)(2)(B); *Fraught*, 668 F.3d at 1239-40.

### III. The Settlement provides $1,000 in damages to Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i).

Finally, separate and apart from the class settlement fund, Defendant will pay $1,000 in "additional" damages to Plaintiff. To that end, the FDCPA at subsection 1692k(a) reads:

(a) Amount of damages

Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

\*    \*    \*

(2)

(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, **(i) such amount for each named plaintiff as could be recovered under subparagraph (A), and** (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.

13

15 U.S.C. § 1692k(a) (emphasis added).

The statute thus expressly provides for a recovery of up to $1,000 for Plaintiff in addition to such amount as each class member could recover. *See, e.g.*, *Pelzer v. Vassalle*, 655 F. App'x 352, 361 (6th Cir. 2016) ("In fact, the FDCPA envisions just this sort of arrangement: Congress caps recoverable damages in a successful FDCPA class action at the lesser of $500,000 or one percent of the defendant's net worth, with an additional amount of up to $1,000 for each named plaintiff. 15 U.S.C. § 1692k(a)(2)(B)."); *Bellum*, 2016 WL 4766079, at *8 ("The FDCPA allows for a higher recovery by the Class Representative than by Class members. Class Representatives can recover additional damages, not to exceed $1,000."); *accord Dickens*, 2019 WL 2280456, at *3 ("Class Representative, on behalf of the estate of Ronnie Dickens, will each receive from Defendant the sum of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i)…."); *Veness v. Heywood, Cari & Anderson, S.C.*, No.: 17-cv-338-bbc, 2018 WL 4489277, at *3 (W.D. Wis. May 17, 2018) ("Plaintiffs will receive from Defendant the sum of $1,000 each pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i)."); *Schell v. Frederick J. Hanna & Assocs., P.C.*, No. 3:15-cv-418, 2016 WL 3654472, at *2 (S.D. Ohio July 8, 2016) (approving recovery to named plaintiff of $1,000 in statutory damages); *Whitford*, 2016 WL 122393, at *2 (same). As a result, the $1,000 individual damages recovery by Plaintiff is fair and supported by existing law.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests that this Court grant final approval of the settlement. As noted, Defendant does not oppose final approval of the settlement.

Dated: April 19, 2022
/s/ James L. Davidson
James L. Davidson
Florida Bar No. 723371
Jesse S. Johnson

14

Florida Bar No. 69154
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: (561) 826-5477
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com

Class Counsel

Matisyahu H. Abarbanel
Matthew Bavaro
Florida Bar No. 175821
Loan Lawyers
3201 Griffin Road, Suite 100
Ft. Lauderdale, FL 33312
Tel: (954) 523-4357
Matis@Fight13.com
Matthew@Fight13.com

Co-Counsel for Plaintiff and the Class